IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

1) KALLIE JO PETRIE, as Personal Representative of the Estate of Blaine Jacob Petrie, Deceased,

    Plaintiff,

v.

1) P.D. TAYLOR, SHERIFF OF OKLAHOMA COUNTY, *in his official capacity*,
2) TURN KEY HEALTH CLINICS, LLC;
3) VICKEY MCDONALD,
4) CANDACE MUSGROVE,
5) DEWEY LOCKE-LENIGER,
6) JOHN DOES 1 - 10
7) NURSE DOES 1-10

    Defendants.

CASE NO. CIV-20-715-J

JURY TRIAL DEMANDED

## COMPLAINT

**COMES NOW** the Plaintiff, Kallie Jo Petrie ("Plaintiff"), as Personal Representative of the Estate of Blaine Jacob Petrie ("Mr. Petrie"), deceased, by and through her attorneys of record, in the above styled case, and for her causes of action against the Defendants, alleges and states as follows:

### INTRODUCTORY STATEMENT

1. This lawsuit is brought against Defendants for violations of Mr. Petrie's Constitutional rights that caused him pain, suffering, and his untimely death while in the custody of the Oklahoma County Sheriff's Office (OCSO).

### JURISDICTION AND VENUE

2. The jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivation of rights secured by the Eighth Amendment and/or

Fourteenth Amendment to the United States Constitution as enforced for 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

3. The jurisdiction of this Court is also invoked under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and the laws of the United States, particularly the Eighth Amendment and/or Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

4. Venue is proper under 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial District.

## PARTIES

5. Plaintiff Kallie Jo Petrie is the duly-appointed Personal Representative of the Estate of Blaine Jacob Petrie, deceased. Plaintiff is also the mother of Mr. Petrie's two minor children, AJP, age five, and JRP, age two.

6. Defendant P.D. Taylor ("Sheriff Taylor" or "Sheriff") is the Sheriff of Oklahoma County. Sheriff Taylor is sued purely in his official capacity. A claim against a state actor in his official capacity, such as Sheriff Taylor, "is essentially another way of pleading an action against the county or municipality" he represents and is considered under the standard applicable to § 1983 claims against municipalities or counties. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). *See also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). As the Sheriff, Defendant Taylor is, in essence, a governmental entity. Again, Sheriff Taylor is being sued *purely in his official capacity.*

7. Defendant Dewey Locke-Leniger was, at all times relevant hereto, employed by the OCSO, acting under color of state law within the scope of his employment. Defendant Locke-Leniger is sued in his individual capacity

8. Defendants John Does 1-10 were Sheriff's detention officers, deputies or jailers whose acts and/or omissions harmed Blaine Petrie and were at all times acting under color of state law and within the scope of their employment at the time of the actions giving rise to this suit. Defendants John Does 1-10 are sued in their individual capacities.

9. Defendants Nurse Does 1-10 were employees of Turn Key Health and/or the sheriff's office whose acts and/or omissions harmed Blaine Petrie and were at all times acting under color of state law and within the scope of employment at the time of the actions giving rise to this suit. Defendants Nurses Does 1-10 are sued in their individual capacities.

10. Defendant Turn Key Health Clinics, LLC (hereafter "Turn Key Health") is a Limited Liability Company licensed to do business in the State of Oklahoma. Turn Key Health contracts with the Oklahoma County Sheriff to provide medical screening, and other health care services to OCDC inmates. Turn Key Health is vicariously liable for the acts of its employees that occur within the scope of employment. Turn Key Health at all times relevant to this litigation employed the Defendants McDonald and Musgrove.

11. Defendant Vickey McDonald was, at all times relevant hereto a licensed practical nurse employed by Turn Key Health at the OCDC. Nurse McDonald was assigned to the intake process at OCDC when Mr. Petrie arrived. Nurse McDonald is sued in her individual capacity.

12.   Defendant Candace Musgrave was at, all times relevant hereto a licensed practical nurse employed by Turn Key Health at the OCDC. Nurse Musgrave was also assigned to the intake process at OCDC when Mr. Petrie arrived. Nurse Musgrave is sued in her individual capacity.

## FACTUAL ALLEGATIONS

13.   Plaintiff re-alleges and incorporates by reference each paragraph of this Complaint, as though fully set forth herein.

14.   On July 22, 2018, Blaine Petrie was involved in an accident with a phantom vehicle on Interstate 44 in Oklahoma County.

15.   The accident was investigated by Oklahoma Highway Patrol Lt. Chris Liles. During the course of the investigation, Petrie reported to Lt. Liles that he hit his head on an airbag that deployed in the accident. Lt. Liles arrested Petrie for DUI.

16.   Lt. Liles took Petrie to Saint Anthony Hospital for medical evaluation on July 22, 2018. At 1832 Petrie was admitted to the Saint Anthony Emergency Department.

17.   Petrie reported that his airbag deployed and that he thought he lost consciousness. Petrie, who at the time was alert and oriented x4, declined further medical treatment to include a CT scan and blood work. Petrie was discharged against medical advice. In the absence of further diagnostic evaluation, Petrie was NOT medically cleared for incarceration by Sasha Koren Jackson, PA-C, an employee at St. Anthony Hospital.

18.   Lt. Liles then took Petrie to the Oklahoma County Detention Center. Upon arrival, Lt. Liles provided Petrie's medical paperwork to the OCDC medical staff. Nurse Candace Musgrove conducted a Pre-booking Screening on Petrie at 2029 on July 22nd. In

that screening Nurse Musgrove noted that it was "Unknown" if Petrie had suffered a head injury in the last 24 hours.

19. After preliminary intake procedures were completed, Petrie was medically evaluated by LPN Vickie McDonald at 0133 on July 23, 2018. Nurse McDonald was notified that Petrie had been to Saint Anthony's Hospital, that treatment was refused, and that Petrie was NOT cleared for incarceration.

20. Nurse McDonald, contrary to the evaluation at Saint Anthony Hospital Emergency Department, and knowing the findings of Nurse Musgrove, apparently concluded Petrie was fit for incarceration. Petrie was assigned to the General Population. At 0233 on July 23, 2019, Petrie arrived at his cell, 4 David 16. Blaine Petrie was discovered dead in his cell at 2200.

21. Petrie's bond had been posted at 1211. Due to mismanagement, understaffing, poor supervision, and deliberate indifference to effectuate his timely release, Mr. Petrie remained incarcerated until his death. When found at 2200 hours, Locke-Leniger was at his cell to permit his release on bail which had been posted ten hours earlier.

22. The OCSO report states that at 1318 Detention Staff Tara Hardin and Crystal Hawk "speaks with PETRIE about Suicide Prevention." CPL Hardin in her statement to the OCDC investigator, Lt. Greg Crump, stated "Inmate Petrie, as I recall, was on the floor with his head under the desk and simply acknowledged my presence, but gave no indication of any needs at that time. ... I do not recall much interaction with inmate Petrie other than my standard requirement that all inmates acknowledge my presence."

23. The OCSO investigative report includes the following reference to OCDC procedures.

Oklahoma County Detention Center policy 4310.01 states:

"The Oklahoma County Detention Center has established procedures for ensuring fifteen (15) minute, thirty (30) minute, and one (1) hour sight checks. Sight checks are established to ensure the safety and security of our inmate population."

24. The last documented time a detention officer interacted verbally with Petrie is 1518 on July 23, 2020, by Quentin Sanders. This verbal contact was seven hours before Petrie was discovered in his cell dead. The last purported sight contact with Petrie was at 1808 when dinner was delivered. This sight contact did not confirm that Petrie was alive and was four hours before Petrie was discovered cold, blue and dead in his cell. At all times that Mr. Petrie was present, the lights in cell 4D16 were inoperable.

25. The "JAIL STAFF REPORTS" for the 4th Floor David Pod indicate sight checks were performed:

   13:55 Sight check 1-50 w/recon
   13:59 Sight check complete
   18:39 Sight check without wand
   18:44 Sight check complete and appears okay
   19:19 Sight check 1-50 without wand
   19:22 Sight check complete and appears okay
   20:19 Sight check without wand
   20:20 Sight check complete and appears okay
   21:00 Missed sight check due to movement
   22:00 Missed sight check due to situation

25. The OCDC investigative report found that "the sight checks on PETRIE'S cell were not recorded accurately." It is believed that the entries for reported checks were fabricated and likely were not done. It is believed, and therefore alleged, that Defendant Locke-Leniger was the officer that failed to conduct sight checks as required by policy.

6

Alternatively, the sight checks, if there were in fact conducted, were made by one of the John Doe employees

26.     Petrie's cellmate, Everardo Martinez, reported to OCDC investigators that Petrie was asleep when Mr. Martinez woke up, and that after a short conversation around 1318, Petrie went back to sleep.  Mr. Martinez reported that Petrie was asleep and did not wake up when dinner was delivered at 1808.  An inmate in an adjacent cell reported hearing Petrie coughing and "whining" earlier in the evening.  It is believed, and therefore alleged, that any employee of the OCSO walking by Mr. Petrie's cell would likely have heard his suffering and could have sought medical assistance for him.

27.     The Medical Examiner's report identifies the probable cause of death as: abnormal heart rhythm, alcoholic liver disease and cardiomegaly, commonly referred to as abnormal enlargement of heart. Abnormal heart rhythm and cardiac complications are commonly caused by head injuries.

## FACTUAL ALLEGATIONS
## RELATED TO DECADES OF INDIFFERENCE AT THE OCDC

28.     On July 31, 2008 the United States Department of Justice, Civil Rights Division, issued the results of its investigation into the Oklahoma County Jail, now OCDC. The investigation began with inspections in 2003 and culminated in a multitude of findings detailing "Constitutional Deficiencies."[1] These deficiencies included "Ineffective classification of detainees;" "Inadequate Heath Care Services;" Inadequate access to Medical Care;" and "Inadequate Detainee Housing," to name a few.[2]

---

[1] DOJ Correspondence, July 31, 2008, page 4
[2] DOJ Correspondence, July 31, 2008, pages 10-17

29. As a consequence of these findings the Oklahoma Board of County Commissioners entered into a Memorandum of Understanding with DOJ dated November 5, 2009. In spite of detailed directives to improve conditions at the OCDC, the number of deaths continued to climb in the detention center.[3] Mr. Petrie was one of many who lost his protected conditions life due the intentional indifference of those responsible for providing constitutionally-.

30. In spite of Department of Justice oversight spanning nearly two decades, the OCDC was at all times relevant to this claim <u>one of only eleven jails</u> in the United States still monitored by DOJ under the Civil Rights of Institutionalized Persons Act.[4]

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Cruel and Unusual Punishment in Violation of the Eighth and/or Fourteenth Amendments to the Constitution of the United States
(Non-Existent or Inadequate Medical Care)
(42 U.S.C. § 1983)**

A. **Allegations Applicable to All Defendants**

31. Plaintiff re-alleges and incorporates by reference each paragraph of this Complaint, as though fully set forth herein.

32, Mr. Petrie, an Arrestee/pre-trial detainee, had been released against medical advice from St. Anthony Hospital and was not cleared for detention. These facts were known to those individuals tasked with evaluating his suitability for incarceration.

33. A medical floor was available in the OCDC to house Mr. Petrie where he would have been regularly monitored for complications arising from his auto accident. Plaintiff

---

[3] https://journalrecord.com/2018/09/27/answers-sought-after-spike-in-health-related-jail-deaths/
[4] Department of Justice Activities Under the Civil Rights of Institutionalized Persons Act Fiscal Year 2018.

believes and therefore alleges that had Nurses McDonald, Musgrove, and/or Nurse Does 1-10 followed proper protocol Mr. Petrie would likely be alive today had he been placed on the medical floor.

34. Defendants McDonald and Musgrove were made aware of Petrie's medical condition including possible loss of consciousness from the accident and that he was not cleared for incarceration. Despite having received this information from St. Anthony's Hospital Emergency Department, they assigned Petrie to the General Population, where he died in his cell. These acts and omissions constitute intentional deliberate indifference to the rights of Blaine Petrie

35. Defendants McDonald, Musgrove, Nurse Does 1-10 and John Does 1-10 failed to provide Mr. Petrie with timely or adequate medical evaluation; proper or adequate medical monitoring and supervision; proper or adequate medical treatment; and proper housing in the medical ward of the OCDC. The failure to provide these basic health care measures constitutes deliberate indifference to Mr. Petrie's serious medical needs, health and safety.

36. As a direct and proximate result of Defendants McDonald, Musgrove, Nurse Does 1-10 and John Does 1-10 conduct, Mr. Petrie experienced physical pain, severe emotional distress, mental anguish, loss of consortium, loss of life, and the damages alleged herein.

**B.    Official Capacity Liability (Applicable to Sheriff P.D. Taylor, in his official capacity)**

37. Plaintiff re-alleges and incorporates by reference each paragraph of this Complaint, as though fully set forth herein.

38. No allegations are made against Sheriff P.D. Taylor in his individual capacity. However, Sheriff Taylor, as a representative of OCDC and Oklahoma County, is liable for Mr.

Petrie's injuries that resulted from the aforementioned unconstitutional acts and/or omissions of OCDC personnel and those that contract with the OCSO to provide services to the OCDC. These services are affirmatively linked to OCDC's adoption and/or maintenance of unconstitutional policies, practices and/or omissions, including the unconstitutional policies, practices and/or omissions detailed *supra*.

## PUNITIVE DAMAGES

39.   Plaintiff realleges and incorporates by reference each paragraph of this Complaint, as though fully set forth.

40.   Plaintiff is entitled to punitive damages on his claims brought pursuant to 42 U.S.C. § 1983 as Defendants' conduct, acts and/or omissions alleged herein constitute reckless or callous indifference to Mr. Petrie's federally protected rights.

**WHEREFORE**, based on the foregoing, Plaintiff Kallie Jo Petrie prays that this Court grant her the relief sought, including, but not limited to, actual damages and compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from the date of filing of suit, punitive damages in excess of Seventy-Five Thousand Dollars ($75,000.00), reasonable attorney fees, and all other relief deemed appropriate by this Court.

Respectfully Submitted,

/s/ Stefan Wenzel
Stefan Wenzel #15923
620 North Robinson Ave. Suite 207
Oklahoma City, Oklahoma 73102
p. (405)509-8878 / f. (405) 488-0529
swenzel.law@gmail.com

AND

*Larry K Lenora* (signature)
Larry K. Lenora, OBA #5372
LENORA & UPTON
116 West 8th Street, P.O. Box 337
Chandler, Oklahoma 74834
p. (405) 258-1334 / f. (405) 258-0249
larrylenora@sbcglobal.net